IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SYLVESTER RICHARDS,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF ATLANTA, GEORGIA,<br>DAVID ST. PIERRE *in his official and individual capacity*, and<br>ROBERT HUNTER *in his official and individual capacity*,<br><br>    Defendants. | CIVIL ACTION NO.<br><br>1:10-CV-03928-CC |

## **OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. No. 20]. For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** Defendants' motion.

**I.    BACKGROUND**

   A.    Facts

This case arises from the Reduction in Force ("RIF") that the City of Atlanta, Georgia implemented in 2008. (Pl.'s Statement of Material Facts "PSMF" ¶ 17; Defs.' Statement of Undisputed Material Facts "DSUMF" ¶ 4.[1]) Plaintiff Sylvester Richards is a black male of Jamaican national origin. (PSMF ¶ 1.) Richards worked for Defendant City of Atlanta, Georgia (the "City") Department of Watershed Management ("DWM"), Bureau of Wastewater Treatment and last held the title of senior watershed director. (DSUMF ¶¶ 1-2; PSMF ¶ 3.) Richards worked for the

---

   [1]   The Court deems Plaintiff's Statement of Material Facts admitted because Defendants have not filed a response to Plaintiff's Statement. Additionally, where Plaintiff's Response to Defendants' Statement of Undisputed Material Facts does not comply with the Court's Local Rules, the Court shall deem Defendants' statements admitted. LR 56.1B(2), NDGa. Finally, the Court will not consider any statement of fact that does not comply with the Local Rules. LR 56.1B, NDGa.

City for more than 20 years and had received several promotions. (PSMF ¶ 3.) In 2006, because of arthritis in his hip, Richards started taking Family and Medical Leave Act[2] ("FMLA") leave. (PSMF ¶ 6.)

Defendants Robert Hunter and David St. Pierre are Caucasian males of United States national origin. (PSMF ¶ 5.) At all times relevant to the RIF, Hunter was the Commissioner of the DWM; he had the authority to hire and fire employees within his department. (DSUMF ¶ 8; PSMF ¶¶ 4, 37.) St. Pierre was hired in July 2007 and was the Deputy Commissioner of the DWM's Bureau of Wastewater Treatment. (DSUMF ¶ 9; PSMF ¶ 8.) St. Pierre reported to Hunter and was Richards's direct supervisor. (PSMF ¶ 4.) When St. Pierre arrived in July 2007, he was displeased that Richards was intermittently absent on FMLA leave, but he did not have the authority to deny Richards's FMLA leave requests. (PSMF ¶¶ 9, 10.) According to St. Pierre, sometimes he could not contact Richards when Richards was on FMLA leave. (PSMF ¶ 12.) St. Pierre and Hunter were concerned about not being able to contact Richards, and Hunter took a "negative" view of that fact. (Id.) St. Pierre made disparaging and insinuating remarks about Richards's ability to "work hard"; he criticized Richards for "never [being] here" and also told Richards that he "might want to step back" to lesser duties "at this point in his career." (PSMF ¶¶ 9, 11.) St. Pierre wanted Richards to leave the DWM and hoped he would retire or otherwise leave "through attrition." (PSMF ¶ 13.) St. Pierre stripped Richards of many job duties and gave those duties to other employees who were not taking FMLA leave. (PSMF ¶ 14.) Instead, Richards was assigned menial tasks such as organizing how things were filed. (PSMF ¶ 15.) That helped give St. Pierre the excuse that

---

[2] The City maintains written policies regarding FMLA leave. (DSUMF ¶ 14.) Those policies state that the City does not allow interference or retaliation based on an employee's use of FMLA leave. (DSUMF ¶ 15.)

Richards's position was not needed and should be RIFed. (PSMF ¶16.)

In or around 2007 through 2008, the DWM faced a significant budgetary shortfall. (DSUMF ¶ 3.) In the fall 2008, the City determined that a RIF was required because of the budget problems. (PSMF ¶ 17.) The City then implemented a RIF and separated employees because of the budgetary shortfall. (DSUMF ¶ 4.) The Commissioner of Human Resources governed the RIF policies. (DSUMF ¶ 17.) And St. Pierre was responsible for selecting positions within his bureau to RIF. (PSMF ¶ 17.) Positions were selected based on reducing duplication of services, budget cuts, streamlining management, centralizing functions, and combining job responsibilities. (DSUMF ¶ 10.)

In September 2008, Richards applied for FMLA leave for October 16, 2008 through April 30, 2009. (PSMF ¶ 19.) Shortly thereafter, St. Pierre decided that Richards's position should be RIFed, and Hunter endorsed and "signed off" on the decision. (PSMF ¶¶ 21, 37.) Hunter and St. Pierre "put[] together our [sic] plan" to recommend Richards's position for RIF and decided to RIF Richards in or around November or December 2008. (PSMF ¶¶ 23, 38.) St. Pierre did not factor Richards's FMLA leave into the decision to eliminate his position. (DSUMF ¶ 12.)

In December 2008, Richards was informed that his position would be eliminated because of the budgetary shortfall. (DSUMF ¶ 5.) On December 10, 2008, Richards was dismissed from employment because of the RIF and lack of funds/budget reduction. (DSUMF ¶ 6; PSMF ¶¶ 2, 24.) Pursuant to the RIF, 97 positions, including Richards's position, were eliminated. (DSUMF ¶ 7.) The RIF was not targeted at Richards or the other 96 employees who were dismissed due to budget issues. (DSUMF ¶ 11.) St. Pierre could have come up with other scenarios where Richards would not have been RIFed. (PSMF ¶ 22.)

Richards complained about his termination to Mayor Shirley Franklin, and the

Director of Human Resources responded by sending Richards a letter in July 2009. (PSMF ¶ 25.) In the letter, Richards was informed that the Office of Diversity Management (the "Office") had investigated his complaint. (Id.) Based on information that Hunter provided, the Office concluded that it had found no evidence of wrongdoing because it was a financial necessity to "eliminat[e] the management layer as to which [he was] assigned." (Id.)

In September 2009, as a way to develop new "talent," Hunter and St. Pierre began seeking candidates for a new senior director position with duties similar to those of Richards's old position. (PSMF ¶ 28.) St. Pierre decided to resurrect the senior director position and had intended to create that new position before he decided to RIF Richards. (PSMF ¶¶ 29, 30.) Defendants hired Rob Bush for the senior director position. (PSMF ¶ 33.) Bush is a white male of United States national origin. (Id.)

B.   Relevant Procedural Background

In December 2010, Richards filed the above-styled action against the City and Hunter and St. Pierre, in their official[3] and individual capacities ("Defendants"). His Complaint[4] alleges claims under the FMLA[5] and 42 U.S.C. § 1983. In April 2011,

---

[3]   Richards's claims against Hunter and St. Pierre, in their official capacities, are considered claims against the City. Cook ex rel Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1115 (11th Cir. 2005) (citations omitted).

[4]   Richards's Complaint has multiple paragraphs labeled 15.

[5]   The FMLA recognizes claims for interference and retaliation. Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001). In his Complaint, Richards alleges that he was terminated "while he was taking FMLA leave, and because he was taking FMLA leave." (Compl. ¶ [16].) Like other courts in this circuit, this Court finds that allegation sufficient to state a claim for interference and retaliation. See Carrasco v. GA Telesis Component Repair Grp. Se., L.L.C., No. 09-23339-CIV, 2010 WL 5248446, at *5 (N.D. Ga. Dec. 16, 2010); Newman v. Crom Corp., No. 1:12CV126-SPM/GRJ, 2012 WL 3536548,

Defendants filed their answer. After the Court extended the time to complete discovery and to file dispositive motions, Defendants filed the instant motion for summary judgment. In their motion, Defendants seek summary judgment in their favor on Richards's FMLA-retaliation claim and his § 1983 claim.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 authorizes the entry of summary judgment when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In seeking summary judgment, the movant bears the initial responsibility of demonstrating that there is no genuine issue as to any material fact and that summary judgment is appropriate. Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1313 (11th Cir. 2007). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). When evaluating the merits of a motion for summary judgment, the court should view all evidence and factual inferences raised by the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts concerning the facts in favor of the non-moving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted). The court is not permitted to make credibility determinations,

---

at *1 (N.D. Fla. Aug. 15, 2012). However, Defendants have not articulated grounds justifying summary judgment on Richards's interference claim. Therefore, the Court will not resolve any issues regarding that claim, and thus, the claim is pending before the Court. See Robinson v. Intercorp, A Division of Nitto Corp., 512 F. Supp. 2d 1307, 1317 (N.D. Ga. 2007) (although defendant moved for summary judgment on all of plaintiff's discrimination claims, defendant failed to articulate grounds justifying summary judgment for each claim in its moving brief); see also Venghaus v. City of Hartford, No. 3:06cv01452 (DJS), 2012 WL 1050014, at *1 n.1 (D. Conn. Mar. 27, 2012).

weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence.  Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

If after adequate time for discovery, a party fails to make a showing sufficient to establish the existence of a necessary element of that party's case, the court should grant summary judgment.  Nolen v. Boca Raton Cmty. Hosp., Inc., 373 F.3d 1151, 1154 (11th Cir. 2004).

### III.   ANALYSIS

#### A.   FMLA-Retaliation Claim

Defendants argue that the City is entitled to summary judgment because Richards cannot establish a prima facie case of retaliation.  The Court agrees.  To succeed on a retaliation claim, a plaintiff must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right.  See Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1207 (11th Cir. 2001) (citing King v. Preferred Technical Grp., 166 F.3d 887, 891 (7th Cir. 1999)).  That can be done through direct or indirect evidence.  Connor v. Sun Trust Bank, 546 F. Supp. 2d 1360, 1372 (N.D. Ga. 2008).  When the plaintiff lacks direct evidence of an employer's intent, courts apply the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973).  Brungart v. BellSouth Telecomms. Inc., 231 F.3d 791, 798 (11th Cir. 2000).  Under the McDonnell Douglas framework, Richards must show that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity.  Strickland, 239 F.3d at 1207 (citing Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000)).  If Richards meets his burden, then Defendants must come forward with a legitimate, nondiscriminatory reason for the adverse action; if they do, the burden shifts back

to Richards to establish pretext. See Walker v. Elmore Cnty. Bd. of Educ., 379 F.3d 1249, 1252 (11th Cir. 2004); see also McDonnell Douglas, 411 U.S. at 802-04, 93 S. Ct. at 1824-25.

To establish his prima facie case for retaliation, Richards alleges, but ultimately does not show, that his December 2008 leave was statutorily protected. The FMLA's most fundamental substantive guarantee gives an eligible employee the right to take up to 12 workweeks of unpaid leave annually. 29 U.S.C. § 2612(a)(1) (2012); Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 93, 122 S. Ct. 1155, 1163-64, 152 L. Ed. 2d 167 (2002). The statute does not suggest that the 12 weeks may be extended. McGregor v. AutoZone, Inc., 180 F.3d 1305, 1308 (11th Cir. 1999). Richards presents evidence that he was approved for 12 weeks of FMLA leave for May 12, 2008 through July 28, 2008. (Pl.'s Aff. [Doc. No. 24] at 13.) A few months later, he requested approximately 28 weeks of additional FMLA leave for October 16, 2008 through April 30, 2009. (Doc. No. 24 at 15.) But by the end of July 2008, Richards had used his 12 weeks of FMLA leave, and thus, the December 2008 leave was not FMLA-protected. See McGregor, 180 F.3d at 1308 (noting that if an employer exceeds the baseline 12 weeks by providing more leave than FMLA requires, that employer should not be sued for violating FMLA). Because Richards was not engaged in statutorily protected activity in December 2008, he fails to establish a prima facie case of retaliation. Therefore, the City is entitled to summary judgment on the retaliation claim.

B.   Section 1983 Claim

Section 1983 only provides a method for vindicating federal rights and is not itself a source of substantive rights. Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 811, 127 L. Ed. 2d 114 (1994) (citations omitted). Thus, to prevail on a § 1983 claim, a plaintiff must show that the defendant deprived plaintiff of a right secured

by the Constitution or federal law and that the deprivation occurred under color of state law. Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998) (citation omitted).

Here, Richards claims that Defendants violated his rights under the Fourteenth Amendment's Equal Protection Clause. Specifically, he alleges that Defendants treated him differently without sufficient cause when they fired him and replaced him with a younger[6] employee of a different race and national origin. Section 1983 claims for employment discrimination also are subject to the McDonnell Douglas test when the plaintiff has not produced any direct evidence of the defendant's illegal motive. Arrington, 139 F.3d at 873 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981)). Discrimination claims based on race or national origin, requires the plaintiff to prove that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside his class more favorably; and (4) he was qualified to do the job. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (citation omitted).

### 1. *Municipal Liability*

Defendants first argue that they are entitled to summary judgment on Richards's § 1983 claim because the City cannot be held liable for its employees' alleged constitutional violations. "'[M]unicipal liability is limited to action for which the municipality is actually responsible.'" Doe v. Sch. Bd., 604 F.3d 1248, 1263 (11th

---

[6] The Court concludes that an age discrimination claim is not actionable under § 1983. Paterson v. Weinberger, 644 F.2d 521, 524-25 (5th Cir. 1981); Ford v. City of Oakwood, Ga., 905 F. Supp. 1063, 1065-66 (N.D. Ga. 1995); Lafleur v. Tex. Dep't of Health, 126 F.3d 758, 760 (5th Cir. 1997); Zombro v. Balt. City Police Dep't, 868 F.2d 1364, 1366-70 (4th Cir. 1989). Therefore, Richards's allegation that his termination was motivated by age discrimination in violation of the Equal Protection Clause under 42 U.S.C. § 1983 fails as a matter of law.

Cir. 2010) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986)).  Thus, municipalities may be held liable only where constitutional torts result from an official government policy, a custom or practice so pervasive and well-settled that it assumes the force of law, or the actions of an official fairly deemed to represent government policy.  Denno v. Sch. Bd., 218 F.3d 1267, 1276 (11th Cir. 2000) (citations omitted).  But, local governments and their branches may not be held liable for constitutional deprivations on the theory of *respondeat superior*.  Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978)).  To impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204-05, 103 L. Ed. 2d 412 (1989)).

Defendants contend that Richards has not identified a persistent and widespread practice attributable to the City.  A custom is a practice that is so settled and permanent that it takes on the force of law.  Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citing Monell, 436 U.S. at 690-91, 98 S. Ct. at 2035-36).  Here, Richards only alleges that his termination "was caused by an official policy, practice, or custom of the City of Atlanta and/or ordered by a person whose decisions created such policy, practice, or custom." (Compl. ¶ 15.)  That allegation is a legal conclusion with no basis in the record; thus, it is insufficient at the summary judgment stage.

Notwithstanding that insufficiency, Richards argues that the City is not immune from suit because Hunter and the HR Director are officials who had final policymaking authority regarding Richards's RIF.  (Pl.'s Br. Opp'n Defs.' Mot.

Summ. J. [Doc. No. 23] at 16-18.)  Where a decision-maker possesses final authority to establish municipal policy with respect to the action ordered, such as a decision to terminate, a municipality may be liable. Quinn v. Monroe Cnty., 330 F.3d 1320, 1325 (11th Cir. 2003) (citing Pembaur, 475 U.S. at 482, 106 S. Ct. at 1300).  However, final policymaking authority over a particular subject area does not vest with an official whose decisions in an area are subject to meaningful administrative review. Id. (citations omitted).  Determining the persons or bodies with final policymaking authority for the defendant is a matter of state law to be decided by the trial judge and not the jury. Doe, 604 F.3d at 1264 (citing Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 738, 109 S. Ct. 2702, 2724, 105 L. Ed. 2d 598 (1989); Owens v. Fulton Cnty., 877 F.2d 947, 950-51 (11th Cir. 1989)).

As evidence that Hunter and the HR Director were final policymakers, Richards points to Defendants' response to an interrogatory. (Doc. No. 23 at 17-18.) But, as the Court has already held, determining who qualifies as a final policymaker is not a fact-question, but a legal-question. See Doe, 604 F.3d at 1264.  Indeed, the policy or custom requirement precludes § 1983 liability for a subordinate official's decisions when the final policymaker delegates decision-making discretion to the subordinate, but retains the power to review the exercise of that discretion.  Id. (citing Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997)).  Here, Richards fails to establish that Hunter and the HR Director's decisions were not subject to meaningful administrative review.  On the contrary, the evidence that Richards relies on shows that the decisions were reviewed. After he was terminated, Richards filed a complaint with Mayor Franklin.  In the letter responding to his complaint, HR Director Alfred Elder told Richards that  Mayor Franklin, the Department of Human Resources, and the Office of Diversity Management had reviewed and investigated Richards's termination. (Doc. No. 24 at 19.)  Because

Hunter and the HR Director's decisions were reviewed and investigated, Hunter and the HR Director were not final policymakers. Therefore, their decisions did not impose liability on the City, and the City is entitled summary judgment on the § 1983 claim.

### 2. *Qualified Immunity*

Defendants contend that Hunter and St. Pierre, sued in their individual capacities, are entitled to qualified immunity. Generally, qualified immunity protects a government official performing a discretionary function from the burdens of a civil trial and liability. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1282 (11th Cir. 2008) (citation omitted). Only when an official's conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known is qualified immunity not available. Id. (citation omitted). An official seeking qualified immunity must initially establish that he or she was acting within his or her discretionary authority. McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007). Thereafter, a plaintiff must show that qualified immunity is inappropriate. Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (citation omitted). At that step, the court must decide whether the right was clearly established at the time of the defendant's alleged misconduct. Id. (citation omitted). Then the court must determine whether the plaintiff has established a constitutional violation. Id. (citing Hope v. Pelzer, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513, 153 L. Ed. 2d 666 (2002)).[7]

Because the parties do not dispute that Hunter and St. Pierre were acting in their discretionary capacities, the Court now must determine whether Richards's

---

[7] Although courts in this circuit often address these prongs in a different order, the Supreme Court holds that courts have discretion to decide which of the two prongs of the plaintiff's burden should be addressed first in light of the circumstances of the case. Bryant v. Jones, 575 F.3d 1281, 1295 (11th Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009)).

right was clearly established at the time he was recommended for the RIF. The relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he or she confronted. Rioux, 520 F.3d at 1282 (citation omitted). Richards contends that the right to be free from discrimination in the public workplace is a clearly established right. Although the Court agrees with that general principle, a plaintiff cannot carry their burden of proving a law to be clearly established by stating constitutional rights in general terms. See Muhammad v. Wainwright, 839 F.2d 1422, 1424 (11th Cir. 1987). In fact, the Eleventh Circuit has noted that "generalities are just not helpful." Id. Thus, Richards must show that a reasonable department commissioner and bureau deputy commissioner of a city would know that recommending a senior director for a reduction in force, under the factual circumstances presented, violated clearly established law. Richards fails to make that showing.

Instead, Richards relies on Rioux v. City of Atlanta, Ga., 520 F.3d 1269 (11th Cir. 2008), for the proposition that "[a]bsent irrefutable proof that the challenged decision was motivated by a legal, nondiscriminatory motive, the official is not entitled to qualified immunity because the underlying issue of discriminatory animus is a factual question that must be resolved by a jury." (Doc. No. 23 at 15.) But Richards misunderstands Rioux. In Rioux, the Eleventh Circuit stated that in a mixed-motives case, "a defendant is entitled to qualified immunity only where the record undisputably establishes that the defendant in fact was motivated, <u>at least in part</u>, by lawful considerations." 520 F.3d at 1283-84 (citation and internal quotation marks omitted). Unlike Rioux, this action is not a mixed-motives case because Richards has not established dual motives. See Rioux, 520 F.3d at 1238 (where defendants had adequate lawful reasons to support their decisions to demote plaintiff and plaintiff established defendants' improper race-based motives, plaintiff

presented a mixed-motives case). Even if Richards had made that showing, Hunter and St. Pierre would be entitled to qualified immunity because the undisputed evidence shows that they were motivated, at least in part, by a lawful consideration: the budgetary shortfall and the City's decision to implement a RIF. Accordingly, Hunter and St. Pierre are entitled to qualified immunity on Richards's § 1983 claim.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment [Doc. No. 20] on Plaintiff's FMLA-retaliation and § 1983 claims and **DENIES** their Motion for Summary Judgment on the FMLA-interference claim. Accordingly, the Court **INSTRUCTS** the parties to submit a proposed joint consolidated pretrial order, as provided by the Local Rules of this Court. After the Court receives the proposed pretrial order, this case will be placed on the next available trial calendar.

SO ORDERED this 19th day of March, 2013.

*s/  CLARENCE COOPER*

CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE